**F. E. ALLCORN, Jr., Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–13407.**

Court of Criminal Appeals of Oklahoma.
March 25, 1964.

Rehearing Denied May 13, 1964.

James P. Goeppinger, Tulsa, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh Collum, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

F. E. Allcorn, Jr., was convicted in the District Court of LeFlore County, State of Oklahoma, of the crime of Larceny of Livestock, and appeals.

It is defendant's first contention that the trial court abused its discretion in over-

ruling a Motion For Continuance, filed by defendant's counsel on the 26th day of March, 1963 (the day of trial). In the Motion For Continuance, counsel for defendant asserted that he had been employed on the previous day (the 25th day of March, 1963) and had not had adequate time to prepare his defense. From the record it appears that the defendant was arraigned in the District Court the 4th day of December, 1961, and that he had been represented by Mr. E. E. Thompson during this period of time and until Thompson notified him on the 5th day of February, 1963, that by reason of ill health, Thompson was withdrawing from the case and defendant was advised, at that time, to secure the services of another attorney. On the 13th day of February, 1963, Mr. Russell E. Moss, of Tulsa, Oklahoma, filed, on behalf of the defendant, a Motion to Dismiss this cause. Hearing was held on the 21st day of February, 1963, at which time Mr. Moss advised the Court that he had been employed only for the purpose of presenting the Motion To Dismiss, and at which time the trial Judge, after denying the Motion To Dismiss, advised Moss that the case would be set for trial in the immediate future. It further appears that this cause was set for the 19th day of March, 1963, and that when neither the defendant nor counsel appeared on that date, the trial court entered an order forfeiting bond; issued a bench warrant for the defendant and reset the trial date for the 26th day of March, 1963, at which time defendant appeared in open court and by counsel, Mr. James P. Goeppinger of Tulsa, Oklahoma, filed this Motion For Continuance. It further appears that subsequent to being released on bond, defendant moved to Jackson, Mississippi, where he maintained his residence at the time of trial.

■ The facts surrounding the Motion For Continuance in the instant case are strikingly similar to those in Winegar v. State, 92 Okl.Cr. 139, 222 P.2d 170; and the rule announced there applies with equal force to the defendant's Motion For Continuance in the instant case. In the body of the opinion, the Court speaking through the Honorable Judge Brett, had this to say:

"* * * This court has repeatedly held that such matters are addressed to the sound discretion of the trial court. It appears herein that the defendant had ample time in which to employ counsel and in which to make preparation for trial had he availed himself thereof. In the case of Bailey v. State, 45 Okl.Cr. 343, 282 P. 894, in syllabus 2 this court said: 'A defendant in a criminal case who waits until just before the trial to employ counsel and until the day of trial to have subpoenas issued for his witnesses has not used diligence, and there is no error in overruling an application for a postponement under such state of facts.' * * * 'A person charged with a felony is not permitted to wait until the day preceding the trial of his case to employ counsel and until the day of trial to have his witnesses subpoenaed and then ask for a postponement because his witnesses are not present. If he expects the assistance of counsel, he must employ him in time and subpoena his witnesses and to prepare for his trial.'"

It is next contended by the defendant that the trial court erred in denying the Motion For Mistrial, after overruling the defendant's Motion For Continuance. It is argued by counsel that during the presentation of arguments in support of the Motion to set aside the bond forfeiture and in support of the Motion For Continuance, certain statements were made by the prosecuting attorney in the presence of the prospective jury panel prejudicial to the accused.

■ While it does appear of record that a Motion For Continuance and a Motion to Vacate a Bond Forfeiture, were filed in defendant's case, and that the Motion For Continuance was denied and the court reserved a ruling on the Bond Forfeiture, neither the arguments of counsel nor the

testimony of any of the prospective jury panel were preserved in the record for a proper review on appeal; in the absence of such a record this Court will not presume error. Title 20 O.S. § 108, provides:

"It shall be the duty of the official court reporter to take down in shorthand, stenotype, or such other method as may be approved by the court and agreed to by all parties, and to correctly transcribe, when required, all the proceedings upon the trial of any cause, as well as all statements of counsel, the witnesses or the court, made during the trial of any cause or with reference to any cause pending for trial, when required by a party or attorney interested therein, and all other matters that might properly be a part of a case-made for appeal or proceeding in error. An attorney in any case pending shall have the right to request of the court or the official court reporter that all such statements or proceedings occurring in the presence of the official court reporter or when his presence is required by such attorney, shall be taken and transcribed. A refusal of the court to permit, or, when requested, to require any statement to be taken down by the official court reporter, or transcribe after being taken down, upon the same being shown by affidavit or other direct and competent evidence, to the Supreme Court, shall be deemed prejudicial error, without regard to the merits thereof."

This statute has been construed as applying with equal force to the cases appealed to the Court of Criminal Appeals.

Had counsel for defense desired to preserve the record he could have done so by requesting that the Court Reporter transcribe the arguments of counsel and by questioning the jury panel with reference to whether they had heard the objectionable remarks and were prejudiced thereby. There appearing nothing in the record before us supporting defendant's contention that improper argument was made in the presence of the jury, and that they were prejudiced thereby, we are of the opinion that this assignment of error is without merit.

For the purpose of considering the next assignment of error, it will here be necessary to briefly set forth the facts as they appear in the record; from the record it appears that:

On Wednesday, the 25th of October, 1961, Mrs. Gladys Myers, a school teacher, residing in Heavener, Oklahoma, drove to her 145 acre pasture situated four miles from Wister, Oklahoma, on highway 270, for the purpose of feeding her stock. The pasture was on the South side of the highway and fenced; entry could be gained to it only through a large gate. Some 300 yards from the pasture was a feed corral and loading chutes and it was in this location that Mrs. Myers placed feed for her stock, which on that date numbered some 35 head of polled hereford calves, springers and heifers. Including among the stock above mentioned, were ten two year old heifers and a cow. Mrs. Myers left and did not return to the premises until Friday morning, October 27th, at which time she discovered the ten heifers and cow missing. She searched the pasture during the balance of the day and was unable to find them. She returned the following day and continued her search, checking all the fences and finding them to be in good order; she then called the sheriff's office and notified sheriff Jack Craig, who came to the premises. Each of the missing heifers and cow had been vaccinated by Dr. Montgomery, the veterinarian in Heavener, Oklahoma, and wore a vaccination tag in their ear; the right hip of each animal was branded with a rocking "J–M", which brand was registered with the State Branding Association.

The following Monday morning, Sheriff Craig proceeded to Tulsa where he found ten polled Hereford heifers and one cow matching the description given him by Mrs. Myers, and bearing the rocking "J–M"

brand on their hips. He notified Mrs. Myers, who drove to the National Livestock Commission Company in Tulsa, Oklahoma where she met Sheriff Craig and identified the cow heifers. Records of the Commission Company established that the cows had been consigned for sale by one F. E. Allcorn, Jr., who listed his home address as Albion, Oklahoma; it was ascertained that they were received at 1:30 or 2:00 A.M. on Thursday, October 26, 1961. Mrs. Loretta Wooten, bookkeeper of the company, advised officers that F. E. Allcorn, Jr. had not been paid for the cattle but was to return for his check when they had been sold. Mrs. Wooten was then instructed to call the office of the Tulsa County Sheriff when Allcorn returned for his check. Tuesday, October 31, 1961, Mr. Allcorn called at the Commission Company for his check, the Tulsa County Sheriff's office was notified of his presence and Deputies Lemons and Jordon were dispatched to the Commission Company where they arrested Allcorn for Larceny of Livestock, took him into custody and placed him in the Tulsa County Jail, later surrendering him to Sheriff Jack Craig. He was taken to Heavener, charged with Larceny of Livestock and on the 4th day of December, 1961, was tried by a jury who found him guilty, fixing his punishment at Seven Years (7) in the State Penitentiary, and from the Judgment and Sentence pronounced in accordance with the verdict of the Jury, he appeals.

In addition to the facts as above set forth, on the trial, the following testimony was offered.

Deputy Sheriff Lemons of Tulsa County and Sheriff Jack Craig of LeFlore County, testified that the defendant, Allcorn, when questioned about the cattle, had stated that he bought them from someone on the down town streets of Stigler, Oklahoma. They further testified that never at any time prior to trial had Allcorn shown them a bill of sale for the purchase of the cattle.

On the trial, Allcorn took the stand in his own behalf and testified that on October 25, 1961, he resided at 313 Northwest 5th Street, Wilburton, Oklahoma, where he lived with his wife and two children; that he was employed by his father Mr. F. E. Allcorn, Sr., as foreman, supervising the construction of a number of houses in that area. He testified that he traded in cattle from time to time and had on several occasions, prior to 1957, assigned cattle for sale to the National Livestock Commission Company. He admitted having taken the cattle here in question, to the National Livestock Commission Company on the 26th of October, 1961, between 1:30 and 2:00 A.M. and stated that he had purchased them from one E. M. Harris in down town Wilburton on the afternoon of October 25th, and he produced a bill of sale for said cattle and offered the same in evidence. He stated that he had first met Harris a few weeks before when the latter's truck, loaded with cattle, had broken down and that he had purchased a load of cattle from him at that time and gave him the sum of $1,250.00 for same. He testified that these cattle were sold through the National Livestock Commission Company in Tulsa, Oklahoma, some two weeks before the 26th of October and he received a profit of $500.00 on this transaction. He stated that Harris represented himself as a cattle trader, buying cattle from individuals and selling in the same manner. On cross examination he admitted that the bill of sale form allegedly signed by Harris, was a form kept in his office and that the same had been typed in by his wife (who did not appear and testify on the trial). When questioned as to why he gave his address as Albion Oklahoma, he said that his father owned a ranch there. He denied having been in LeFlore County on the 25th of October, and denied knowing Mrs. Myers or anyone residing in the vicinity of Heavener. At this point in the cross examination, and over the objection of the defense counsel, Allcorn admitted that he was acquainted with, and a friend of Jerry Davidson of the Heavener vicinity, and that Davidson's address at the time of the trial was State Penitentiary, McAlester,

Oklahoma. He then answered, over the objection of defense counsel, that he was acquainted with Craig Lindsay also from the vicinity of Heavener, and in the State Penitentiary at McAlester, Oklahoma. Witness further admitted that he drove the cattle to Tulsa in a truck belonging to his father Mr. F. E. Allcorn, Sr. and that said truck was equipped with Mohawk snow-grip tires.

Mr. F. E. Allcorn, Sr., testified that his son was employed as a foreman in Wilburton on October 25, 1961, for the sum of $150.00 per week for supervising housing construction there. He further testified that he did not know whether or not F. E. Allcorn, Jr. was in LeFlore County on October 25, 1961, or his whereabouts during that month, since considerable time had elapsed between that time and the date of the trial. Mr. Allcorn, Sr. testified that he owned a ranch near Albion Oklahoma, but that his son, F. E., Jr. had never hauled cattle for him to the sale. He testified that the son had access to and permission to use Allcorn's truck and had on two occasions hauled cattle to Tulsa in the truck. He further testified that the truck used to haul the cattle was equipped with snow-grip tires and that a number of companies manufactured mud and snow-grip tires and that the design of each company differed from the other. The testimony of F. E. Allcorn, Jr., and Sr., relating to the mud and snow-grip tires on the truck was obviously introduced by the defense to offset, counteract and weaken the testimony of Sheriff Craig, whose testimony, earlier in the trial we now take the liberty of quoting:

" * * *

"Q. And what did your observation reveal?

"A. Some truck or vehicle had backed up there to the loading chute; it had mud and snow tires on the rear of it, highway tread on the front.

"Q. Could you tell, Sheriff, whether the truck had pulled down from the highway?

"A. It had turned, pulled in from off the highway into the pasture, to the loading chute, * * *

"Q. Did you observe these tire marks?

"A. Yes, Sir.

"Q. In the course of you being Sheriff of LeFlore County, Mr. Craig, have you had occasion to investigate vehicle tire marks in the past?

"A. Yes, Sir.

" * * *

"Q. Have you—after you observed these tire marks, did you find— ever see these tire marks again at any place?

"A. Yes, Sir.

"Q. Where was that Sheriff?

"A. I seen them on Mr. Allcorn's truck and also another loading chute.

"MR. GOEPPINGER: (Defense Counsel) If the Court please, may I ask a qualifying question of this purported expert?

"THE COURT: Yes

"Q. What kind of tires did these tire tracks come from?

" * * *

"A. Mud and snow on the rear and highway tread on the front.

"Q. What make?

"A. They're almost all the same.

"Q. Goodyear's the same as Firestone, is that correct, Sir?

"A. Well, in mud and snow they are.

"Q. Are you sure about that, Sir?

"A. Maybe a little bit different.

"Q. All tire treads on mud and snow are the same? B. F. Goodrich, Firestone * * * ?

"A. On mud and snow, they are. You can have hard rock and several other different types.

"Q. Did you take any plaster of paris casts out there, Sir?

"A. No Sir, tried to and couldn't.

" * * * "

The testimony above refers to an investigation made on the 28th day of October 1961, at the pasture of Mrs. Myers. Sheriff Craig, later in testimony admitted that he was not an expert, but stated in response to further questioning, that during his fourteen years as Sheriff he had on more than two hundred occasions made such comparisons. While there was no objection to the testimony of Sheriff Craig relating to the similarity of the tires on defendant's father's truck, and those at the pasture, defense counsel moved that this testimony be stricken from the record and the Jury admonished not to consider it and also for a mistrial, all of which was overruled and excepted to.

We will next address ourselves to the contention that the trial court erred in not striking the testimony of Sheriff Craig relating to the tire marks, supra, and admonishing the Jury to disregard the same and compounded this error when he refused to grant the defendant's motion for mistrial, based on the admission of such evidence.

■ The defendant relies upon the language used in Syllabus #4 of Courtright v. State, 79 Okl.Cr. 270, 154 P.2d 588; the same providing:

"A witness may not testify to conclusions, but may testify to facts established by examination of [motor vehicle] tracks, which examination was made shortly after crime is alleged to have been committed. This [and such rule] is especially true of peculiarities shown by tracks."

The Attorney General, in support of the ruling of the trial court in refusing to strike the testimony of Sheriff Craig and denying the defendant's Motion for Mistrial, relies on syllabus #3 as set forth in Courtright v. State, supra, the same providing:

"Evidence of footprints and tracks are admissible in a criminal case. The weight and credibility to be given to such testimony is a question for the jury alone to determine, after taking into consideration all facts and circumstances surrounding the individual case."

Careful examination of the factual situation recited in the Courtright opinion discloses that the Sheriff took plaster of paris casts of tire prints found at the location where the cattle had been stolen, and later examined the tires of the defendant's truck, after the defendant had rotated the tires. The opinion further discloses that other state's witnesses had examined the tire prints and compared them with the tires on the defendant's truck. The court in the Courtright decision ruled that these were admissible. Although not mentioned in the Courtright opinion but obviously considered by the Court, was the earlier decision of Carroll v. State, 54 Okl.Cr. 196, 16 P.2d 891. In the Carroll case, Judge Edwards ruled that it was proper for a lay witness to testify that a wheel on defendant's car made a track the same as one made by a car near the scene of the theft of domestic fowl. In the body of the opinion it is stated:

" * * * It is sometimes said evidence of this kind is a statement of fact as it appeared to the witness and not an opinion. As a general rule, the witnesses should testify to facts and let the jury draw their conclusions from the facts as stated. This rule, however, should not be pushed to the extreme limit; it is modified by the further rule that opinions or conclusions of ordinary witnesses derived from common experience and observation of things which persons generally are capable of comprehending and understanding are admissible when the nature of the subject-matter is such

that it cannot be reproduced or detailed to the jury precisely as it appeared to the witness at the time. Whether this testimony be classed as a statement of fact or an opinion, it was admissible."

[redacted] In the instant case the sheriff was unable to make a plaster of paris cast of the tire prints and although not an expert, he was a man with considerable experience in tire print comparison and had examined the tire prints critically with a view to noting the general character and appearance, for the purpose of later comparison in his continuing investigation of the crime. He later viewed the defendant's father's truck, examined the tires and on the basis of this comparative examination, stated that they were the same as those previously viewed at the scene of the larceny.

[redacted] The admission of this evidence was not violative of the rule against the acceptance of an opinion or conclusion of the witness, but rather a descriptive statement of a fact made from personal observation. Cunningham v. State, 14 Ala.App. 1, 69 So. 982.

Having concluded, under the authorities above cited, that the testimony of Sheriff Craig, relating to tire print comparison was admissible, we will next consider the contention of the defendant that the evidence was insufficient to support the verdict of the Jury.

[redacted] The evidence in the instant case, presented for the consideration of the Jury, testimony which, if believed, established the following facts: (1) Eleven heifers and a cow with the brand of the rocking "J-M" on the right hip, were taken from the pasture of Mrs. Gladys Myers without her knowledge and consent. (2) Tire prints of a truck matching those of a truck to which the defendant had access were found at the point where the cattle were loaded. (3) The next day after the cattle had been stolen, defendant consigned them for sale to the National Livestock Commission Company in Tulsa, Oklahoma. (4) The defendant asserted that he had purchased them from E. M. Harris, and introduced a bill of sale typed by defendant's wife. (5) Defendant did not know and was unable to produce the whereabouts of the said E. M. Harris. We believe the Syllabi 1, 2, and 4, of Watkins v. State, Okl.Cr., 351 P.2d 317 clearly establishes the law applicable in the instant case. In Syllabi 1, 2, and 4, this Court said:

"1. Questions of fact are for the sole determination of the jury and their finding will not be disturbed on appeal where there is any evidence reasonably tending to support the verdict.

"2. Where there is evidence tending to explain the possession of recently stolen property by the defendant, the trial judge should give an instruction covering this theory of defense. * * *

"4. Where the accused has possession of recently stolen property, and attempts to explain its possession, the burden of proving the truthfulness of his possession is on him, and even though it may be reasonable, is a question of fact for the jury." See also: Edwards v. State, 96 Okl.Cr. 86, 248 P.2d 1053; Field v. State, 95 Okl. Cr. 161, 241 P.2d 1122; Bourns v. State, 57 Okl.Cr. 377, 48 P.2d 353.

[redacted] Under the authorities above set forth we are of the opinion that there was ample evidence to support the verdict of the Jury and we will here follow the rule that:

"Where there is competent and substantial evidence in the record from which the jury might reasonably conclude that the defendant is guilty of the crime charged, the jury's verdict will not be interfered with upon the ground that the evidence is insufficient to sustain the conviction." Maher v. State, Okl.Cr., 344 P.2d 285.

■ There are other assignments of error urged by the defendant and while these assignments of error have some merit, when considered separately or collectively, they are not of such a fundamental nature as to require reversal. We are of the opinion, however, that the errors complained of, might have caused the jury to impose a greater punishment than would ordinarily be imposed in such cases, and for this reason, the Judgment and Sentence of Seven (7) Years in the State Penitentiary at McAlester, Oklahoma is modified to a Sentence of Five (5) Years in the State Penitentiary at McAlester, Oklahoma, and as so modified is affirmed.

Judgment and sentence of seven years in the State Penitentiary modified to five years in the State Penitentiary, and as so modified affirmed.

JOHNSON, P. J., and NIX, J., concur.