[Crim. No. 9501. Second Dist., Div. Two. Aug. 22, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. ARLESTER GORDON, Defendant and Appellant.

H. Randolph Moore, Jr., under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, John T. Murphy and Lawrence R. Mansir, Deputy Attorneys General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant and his codefendant Mary Duffy were convicted by a jury of violating Penal Code, section 496,

receiving stolen property. The appeal is from the judgment and the order denying motion for a new trial. The appeal from the latter is dismissed. (Pen. Code, § 1237.)

On March 28, 1963, Prentiss Green's home was burglarized and a hi-fi set was taken.

On April 20, 1963, Officers Helvin and Kelch of the Los Angeles Police Department responded to a disturbance of peace complaint placed by codefendant Duffy, arising from her desire to eject appellant from her house. When the police arrived, appellant was gathering his clothing, and announced that he would leave shortly. He started to take a phonograph set. Miss Duffy objected, saying ''You are not going to take that.'' When appellant persisted in the removal of the set, Miss Duffy, in a whisper to him, overheard by the police, said: ''If you try to take that I will tell them it is stolen.'' Appellant did not reply and moved to the door with the set. At this point, Miss Duffy turned to the officers and said: ''Officers, that box is stolen.'' Gordon made no reply.

At this point the record becomes rather sketchy. It is clear that Officer Helvin called police headquarters and determined that the set had in fact been stolen from the home of Prentiss Green, which was one block away from the Duffy house. Appellant and Miss Duffy both explained that the set had been obtained from a man as security for a $10 loan. Both defendants maintained this story throughout the proceedings.

 Prentiss Green testified at the preliminary hearing, but could not be produced at the trial. The prosecution offered Green's prior testimony under the provisions of Penal Code, section 686 subdivision (3), which provides for such procedure where the witness ''cannot with due diligence be found within the state.'' To lay a foundation for due diligence, the process server for the district attorney's office testified what he did to locate Mr. Green. This testimony was heard before the jury, over appellant's objection.[1] When appellant took the stand to

---

[1]The efforts of the process server, according to his testimony, are accurately summarized by the respondent in his brief, as follows:
''General
''Law Enforcement Agencies:
''Los Angeles County Sheriff's Department; Los Angeles Police Department; State Bureau of Criminal Investigation and Information; Los Angeles County Probation; State Parole; Federal Parole.
''Other Agencies:
''Department of Motor Vehicles; Registrar of Voters; Morgue; Los Angeles County General Hospital; California Department of Employment; Union Rescue Mission.
''Specific Leads
''South Raymond Street address given at preliminary examination;

refute the process server's evidence, the court stated "we will have to have the jury go upstairs, so that they will not be required to listen to anything from the defendant that has nothing to do with the question of guilt or innocence." Appellant testified he had made a brief attempt to locate Mr. Green, that he was not successful, but given the opportunity, he thought he could find the missing witness.[2]

Appellant insists that due diligence within the meaning of section 686 subdivision (3) of the Penal Code was not shown as a matter of law. In *People* v. *Reston,* 139 Cal.App.2d 485, the court stated at page 494 [293 P.2d 880] :

"The word 'diligence' [as used in the foregoing section] connotes persevering application, untiring efforts in good earnest." The court continues, quoting from *People* v. *McDonald,* 66 Cal.App.2d 504, at p. 509 [152 P.2d 448] : " 'The provisions of section 686 of the Penal Code . . . contemplate something more than a desultory and indifferent search for a witness.' "

It is also well established, however, that the question of what constitutes due diligence to secure the presence of a witness is largely within the discretion of the trial court, and depends upon the facts of each case. (*People* v. *Cavazos,* 25 Cal.2d 198, 200, 201 [153 P.2d 177].)

The court ruled that a showing of due diligence had been made. The testimony of Prentiss Green given at the preliminary hearing, complete with cross-examination by appellant's counsel, was read. There was no abuse of discretion in this ruling.

Appellant urges prejudicial error because the process-server was permitted to testify before the jury, but the jury was dismissed when he attempted to refute that testimony. He argues : "When they [the jury] returned, the court had ruled against appellant and allowed the people to read the tran-

---

41st Street address given as forwarding address from previous residence; Post Office check of 41st Street address; place of employment given at preliminary examination; two local unions; telephone company for record of Raymond Street address; utility companies for gas, electricity, and water records of Raymond Street and 41st Street addresses; bank where he had an account; East 35th Street address obtained from the Department of Motor Vehicles; Cloverdale Street address obtained from Department of Employment; investigating officers for haunts or friends of Green.''

[2]Appellant testified that he went to Mr. Green's former residence and spoke to the manager of the building and the present tenant of Green's apartment. From them he obtained information which, in his opinion, would lead to the location of the missing witness, if pursued. The information is not detailed.

script. This necessarily carried the impact that the court did not believe the appellant and gave less credence to his testimony. It gave the appearance that appellant should not be believed.''

■ We agree that it would have been fair and proper for the trial judge to have had appellant's testimony on this subject heard by the jury since respondent's testimony was permitted over objection in the presence of the jury. However, the record indicates clearly that the trial judge stated in the presence of the jury, referring to such testimony, that ''. . . there isn't anything that comes out that has anything to do with the substance of the offense charged.'' When appellant was about to take the stand, the trial judge, as he was in the act of excusing the jury, said in part: ''. . . so that they will not be required to listen to anything from the defendant that has nothing to do with the question of guilt or innocence.''

■ There is evidence that appellant was present when Miss Duffy asserted to the police that the phonograph set was stolen. He said nothing until the police checked on the veracity of her accusation and requested an explanation.

Respondent requested and the court gave the following instruction: ''If you should find from the evidence that there was an occasion when the defendant, under conditions which fairly afforded him an opportunity to reply, failed to make denial . . . in the face of an accusation, expressed directly to him or made in his presence, charging him with the crime for which he now is on trial . . . and if you should find that he heard the accusation and understood its nature, the circumstance of his silence . . . may be considered against him as indicating an admission that the accusation thus made was true. . . .''

Appellant asserts that the court erred in so instructing the jury.

The statements made by Mrs. Duffy form the basis of the above instruction. These statements were not made by either of the officers. They were made by appellant's codefendant before appellant was arrested or even suspected of any crime. In these circumstances the language of the court in *People* v. *Wilson,* 238 Cal.2d 447 [48 Cal.Rptr. 55], commencing at page 455, is apposite:

''Defendant assumes that all of the questions propounded . . . are accusatory statements, and that it was error to admit them and his conduct in response thereto because of his right to remain silent under the federal and state Constitu-

tions. He appeals to three separate, although related, legal principles, as demonstrating the error of the trial court (see *People* v. *Simmons* (1946) 28 Cal.2d 699, 721 [172 P.2d 18]; *People* v. *Dorado* (1965) 62 Cal.2d 338, 342-357 [42 Cal.Rptr. 169, 398 P.2d 361]; and *Griffin* v. *California* (1965) 380 U.S. 609 [85 S. Ct. 1229, 14 L. Ed. 2d 106]), but no one of them is controlling here.

". . . The questions directed to defendant concerning his name, where he was going in such a hurry, his address, whether he lived in the area, with whom he had been, and whether there was anyone in the area the officer could contact to clear him, contain no accusations which are converted into adoptive admissions by the defendant's silence, unless resort be had to the fact, which was conceded by all, that he was in a hurry when apprehended. The silence here is mere nonassertive conduct; it is not a declaration but a failure to offer an explanation, under circumstances which call for one, which in turn gives rise to an inference of consciousness of guilt. (See Cal. Evid. Code (1965) §§ 225, subd. (b) and 1200, and Comment, § 1200; cf. 2 Wigmore, Evidence, §§ 273, 276, pp. 106-111; and Witkin, Cal. Evidence (1958) § 214, p. 239; with 4 Wigmore, Evidence, §§ 1071-1072, p. 70, et seq.; and Witkin Cal. Evidence (1958) §§ 235-237, pp. 266, et seq.)''

▊ Appellant's reliance on *People* v. *Stewart*, 236 Cal. App.2d 27 [45 Cal.Rptr. 712] and *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] is inappropriate. The accusatory statement criticized was not made by the police during the accusatory stage. It was made by appellant's codefendant before there was any arrest. Appellant was not exercising his absolute constitutional right to remain silent under *Dorado* conditions (see *People* v. *Stewart, supra*, at pp. 32-33), for clearly *none* of the crucial preconditions of that decision existed.

▊ Appellant complains further that it was error to permit the prosecution on cross-examination to ask whether she had not had her own phonograph stolen previously. She answered in the affirmative. The prosecution then asked whether she had charged appellant and another person with that theft, to which Miss Duffy replied that she did not. Objection was lodged and overruled. Appellant now contends that this line of questioning was improper because it tended to prove the commission of other crimes by appellant.

▊ Evidence of another crime is admissible, of course, if it is relevant on an issue other than mere criminal character.

(*People* v. *Toms,* 163 Cal.App.2d 123, 127 [329 P.2d 90] ;
*People* v. *Lyon,* 135 Cal.App.2d 558, 578 [228 P.2d 57].)
■ The prosecution argues that the purpose of the question
was to prove that her motivation in accusing appellant in the
presence of the police was not, as she had previously ex-
plained, because they had a quarrel and she fabricated the
charge, but rather that she knew appellant had previously
stolen her set and now replaced it with a similarly stolen set.
It also tended to show appellant's motivation in either steal-
ing the set or in obtaining a stolen one to replace the one for
whose loss he was responsible.

■ Finally, appellant asserts that the evidence was
insufficient to support the verdict. Concededly it is not
overwhelming, but it is adequate. The appellant was accused
by his girlfriend of stealing a phonograph set that was in fact
stolen. He remained silent when Miss Duffy made the state-
ment it was stolen before he was arrested or charged with the
theft or receipt of stolen goods. He ultimately explained he
received it from a friend he couldn't locate as security for a
loan of $10. He admitted bringing the set into Miss Duffy's
home. Whether the $10 was appellant's money or Miss
Duffy's, is not clear. On such evidence the jury could have
found appellant guilty of receiving stolen property. Our
inquiry must extend no further.

The judgment is affirmed. The appeal from the order
denying motion for a new trial is dismissed.

Herndon, J., and Fleming, J., concurred.