[Crim. No. 12966. In Bank. Apr. 5, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH PRESTON, Defendant and Appellant.

## COUNSEL

Robert Y. Bell, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Robert R. Granucci, Derald E. Granberg and William D. Stein, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.** — This is a companion case to *People* v. *Sommerhalder, ante,* p. 290 [107 Cal.Rptr. 289, 508 P.2d 289]. The defendants were jointly charged with two counts of murder (Pen. Code, § 187), but were separately tried and convicted of murder in the first degree (Pen. Code, § 189). Each received the death penalty. This is the automatic appeal of Kenneth Preston.

Substantially the same evidence was presented by the prosecution as in the companion case, and it will be considered here only to the extent that it was different or that it affects issues not already determined by this court in that case.

*Change of Venue.*

Preston contends that the Marin community was exposed to prejudicial publicity before and during his trial and that he was deprived of a fair trial by reason of being tried in that county. ██ ██ The trial court did not err in denying the pretrial motion jointly made by these defendants for change of venue. (*People* v. *Sommerhalder, supra, ante,* p. 290.)

Independent review of the *voir dire* of the Preston jury establishes that all of the prospective jurors except one were closely examined on this issue. The jurors that were seated stated that they had either never heard of it, had heard of it but formed no opinion, or they had formed an opinion which they no longer held. One juror was not questioned on this by the defense and the record does not, therefore, show prejudice.

(Cf. *People* v. *Parker* (1967) 255 Cal.App.2d 664, 673 [63 Cal.Rptr. 413].) Each juror affirmed that he knew of no reason why he could not be fair and impartial.[1] Such statements must be presumed to be true. *(People* v. *Magee* (1963) 217 Cal.App.2d 443, 473 [31 Cal.Rptr. 658].)

During the course of the trial the court continuously instructed the jury that they should not read newspaper articles, that the articles might contain references to evidence which had not been admitted and which it was not proper for them to consder, that they should not infer or even reflect as to whether that evidence would be favorable or unfavorable to either side, and that they should avoid any course that might make such evidence available to them. (See A.B.A. Standards Relating to Fair Trial and Free Press, Approved Draft, 1968, § 3.5, subd. (e).) It is presumed that these instructions were obeyed. There is nothing in the record to show otherwise nor to require further questioning of the jury on this subject during the trial. (See A.B.A. Standards, *supra,* § 3.5, subd. (f).)

We find that defendant received a fair and impartial trial under the standard of "reasonable likelihood" set forth in *Maine* v. *Superior Court* (1968) 68 Cal.2d 375 [66 Cal.Rptr. 724, 438 P.2d 372].

*Adoptive Admissions.*

Extrajudicial out-of-custody statements made by Sommerhalder which incriminated himself and Preston, and the words or conduct of Preston in response thereto, were admitted into evidence over defense objections, after a hearing outside the presence of the jury on their admissibility. (Evid. Code, §§ 1221, 400-406.)[2] These statements were admitted under a well-recognized exception to the hearsay rule. (See Witkin, Cal. Evidence (2d ed. 1966) §§ 529-530, pp. 501-504; Chadbourn, 4 Wigmore on Evidence (rev. ed. 1972) §§ 1071-1072, pp. 102-129.)

■ If a person is accused of having committed a crime, under circumstances which fairly afford him an opportunity to hear, understand,

---

[1] Penal Code section 1076 provides that in a challenge for implied bias "no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter . . . *provided,* it appear to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him . . . ."

[2] Evidence Code section 1221. "Adoptive Admission. Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth." Sections 400-406, inclusive, describe the preliminary determinations which must be made on admissibility of evidence.

and to reply, and which do not lend themselves to an inference that he was relying on the right of silence guaranteed by the Fifth Amendment to the United States Constitution, and he fails to speak, or he makes an evasive or equivocal reply, both the accusatory statement and the fact of silence or equivocation may be offered as an implied or adoptive admission of guilt. (*People* v. *Tolbert* (1969) 70 Cal.2d 790, 805 [76 Cal. Rptr. 445, 452 P.2d 661]; *People* v. *Robinson* (1964) 61 Cal.2d 373, 401-402 [38 Cal.Rptr. 890, 392 P.2d 70]; *People* v. *Briggs* (1962) 58 Cal.2d 385, 408-409 [24 Cal.Rptr. 417, 374 P.2d 257]; *People* v. *Davis* (1954) 43 Cal.2d 661, 670 [276 P.2d 801]; see *People* v. *Osuna* (1969) 70 Cal.2d 759, 765 [76 Cal.Rptr. 462, 452 P.2d 678]; Evid. Code, §§ 1221, 1204.)[3]

A hearing was held outside the presence of the jury to determine the admissibility of this evidence. Suzanne Mulkey, daughter of one of the victims, testified that she and Sommerhalder's brother Richard had gone to Preston's house at Sommerhalder's request the day after the Ackley murders; that the four of them were closeted in Preston's small bedroom; that she and Preston sat on the floor on a mattress while Sommerhalder stood about a foot away; that Sommerhalder spoke in a low voice but not in a whisper; that he told them "Suzanne, we went down to your mother's trailer house, and we broke in, and as we were leaving, we had everything ready to go out, and they came in, and there was an accident and . . . but they won't talk"; that Preston looked right at her and Richard and told them "There wasn't much money" and, she added, "It was cold the way he said it."

These statements accused defendant' of being with Sommerhalder in the Ackley trailer at the time when the burglary and killings took place. They were voluntarily made, in a private conversation, in a private home, with only these four persons present. Inferences could properly be drawn that defendant heard the statements, understood their import, had the opportunity to deny, and that he chose to remain silent except for an evasive and equivocal statement. There is no basis for any inference that his silence was based upon his Fifth Amendment privilege of silence. We find no error in the admission of this evidence at the trial as an exception to the hearsay rule.

---

[3]Evidence Code section 1204. "Hearsay statement offered against criminal defendant. A statement that is otherwise admissible as hearsay evidence is inadmissible against the defendant in a criminal action if the statement was made, either by the defendant or by another, under such circumstances that it is inadmissible against the defendant under the Constitution of the United States or the State of California."

At the trial there was further evidence that in the conversation in Preston's bedroom Sommerhalder had also stated "If . . . everything would have been all right when they were in the trailer they wouldn't have seen Kraut"; "Your father walked in and saw Kraut"; "If he wouldn't seen Kraut, everything would have been all right"; and "It was either them or us." There was evidence that defendant was known as "Kraut." The witnesses also testified that defendant stated, in that conversation, "We are sorry that it happened that way" and that they felt threatened by both defendants when Sommerhalder warned them "If any information leaks out, we will know who did it."

Defendant urges that the admission of this evidence amounted to an improper comment upon his right to remain silent at the trial, in violation of *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]; and *People* v. *Cockrell* (1965) 63 Cal.2d 659 [47 Cal.Rptr. 788, 408 P.2d 116]. There is nothing in *Griffin* or *Cockrell* which requires rejection of this evidence. Those cases proscribe drawing an inference adverse to a defendant from his failure to reply to an accusatory statement in a situation where failure to reply was based upon his constitutional right to remain silent. ■ The Fifth Amendment privilege against self-incrimination does not on its face apply to commentary on defendant's nonassertive conduct prior to trial, absent a showing that such conduct was in assertion of the privilege to remain silent. (*People* v. *Wilson* (1965) 238 Cal.App.2d 447, 455-461 [48 Cal.Rptr. 55].) No such showing was made here.

■ Nor do we find any violation of the rule stated in *People* v. *Aranda* (1965) 63 Cal.2d 518, 529 [47 Cal.Rptr. 353, 407 P.2d 265], by the admission of this evidence.[4] *Aranda* did not change the law regarding the admissibility of evidence under the adoptive admission exception to the hearsay rule. (*People* v. *Glover* (1969) 270 Cal.App.2d 255, 258 [75 Cal.Rptr. 629]; *People* v. *Gordon* (1966) 244 Cal.App.2d 391, 395-396 [53 Cal.Rptr. 252].)

■ We find no merit in the contention that the admission of this evidence impaired defendant's Sixth Amendment right to confrontation, and to cross-examination of his accuser. The evidence was admitted not to prove the truth of the statements but to show defendant's response to them. Credibility of the witnesses who testified that they heard these

---

[4] *Aranda* involved a joint trial of codefendants and the admission of the confession of one defendant implicating a codefendant. It held that the erroneous admission into evidence of such a confession is not necessarily cured by an instruction that it is to be considered only against the declarant.

accusations and observed defendant's response, and the weight to be given to their testimony were in issue and they were cross-examined on *voir dire* and before the jury. There was no necessity for subpenaing the person who made the accusations and, under the circumstances, it would have been unrealistic to have done so. The accuser was himself charged with these same crimes, he was waiting for defendant's trial to be concluded so that his could commence, and he was entitled to rely upon his own Fifth Amendment privilege. We find no violation of *Pointer* v. *Texas* (1965) 380 U.S. 400 [13 L.Ed.2d 923, 85 S.Ct. 1065]; or *Douglas* v. *Alabama* (1965) 380 U.S. 415 [13 L.Ed.2d 934, 85 S.Ct. 1074], in the admission of this evidence.

The court carefully instructed the jury as to its limited consideration of this evidence, namely that it was not received for the purpose of proving its truth but only to explain the conduct of the accused in the face of it. The court outlined the circumstances under which the jury could consider defendant's silence and conduct as "indicating an admission that the accusation thus made was true"; pinpointed this instruction to the particular conversation; advised that guilt of the accused may not be established alone by any admission made by him "outside of this trial," that there must be proof independent of any such statement that the crime in question was committed, but that it was not necessary that such independent proof include proof as to the identification of the person by whom such offense was committed. We find no error in these instructions. It was for the jury to weigh the conduct and responses of defendant and decide whether they gave rise to an inference of guilt. (*People* v. *Davis, supra,* 43 Cal.2d 661, 671-672.)

■ Defendant urges on appeal that the trial court committed prejudicial error in failing to instruct the jury that he had the right to rely upon the "state of the evidence" (former criminal jury instruction CALJIC No. 51B) and that they were not to draw an adverse inference from his failure to testify (former CALJIC No. 51). Defendant does not contend, however, that the court was required to give this instruction on its own motion. (See *People* v. *Gardner* (1969) 71 Cal.2d 843, 852-854 [79 Cal.Rptr. 743, 457 P.2d 575].) The record does not reflect any request by defendant that these instructions be given. In his summation to the jury defense counsel avoided any reference to the fact that defendant did not testify at the trial, stating merely that since the burden did not rest upon the accused to prove himself innocent he could have rested his case without putting on any witnesses. The trial court properly instructed the jury that since defendant had pleaded innocent the burden rested upon the prosecution to prove every element of its case and that the jury

must presume him innocent until otherwise convinced beyond a reasonable doubt.

■ It was proper for the prosecutor to discuss the evidence and to present to the jury his views of the proper deductions or inferences that the facts warrant. (*People* v. *Miller* (1969) 71 Cal.2d 459, 482 [78 Cal. Rptr. 449, 455 P.2d 377]; *People* v. *Atchley* (1959) 53 Cal.2d 160, 174 [346 P.2d 764].) He did comment upon the conversation and conduct which took place in Preston's bedroom on January 13, 1968. He made no reference to defendant's decision not to testify at the trial in his own behalf nor his failure, at the trial, to refute the implications arising from his silence on that former occasion. We find no prejudicial misconduct in the making of these comments by the prosecutor and no violation, by reason of such comments, of defendant's right to silence.

We find no merit in the further contention that the admission of this evidence was, in effect, an attack upon defendant's right to silence. Defendant asserts that in order to refute that evidence, presented at the trial, he would have had to forego at the trial his right to silence. ■ The Fifth Amendment immunizes the accused from being required to incriminate himself. It does not immunize him against the presentation of evidence against him which is otherwise lawfully admissible and which is not in violation of other constitutional protections.

*In-custody Statement of Defendant.*

■ Extensive *voir dire* was held before the admission of one in-custody statement made by defendant which tended to incriminate him. We find no violation of the requirements of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], in the admission of this statement.

Undersheriff Sid Stinson of Marin County testified on *voir dire* that he first met defendant about 6:30 am. on Sunday, January 14, 1968, in the Sonoma County Sheriff's office in Santa Rosa; that he first advised defendant of his *Miranda* rights, reading them from a printed card; that he asked defendant if he understood what had just been read to him; and that defendant replied "Yes, I understand." Stinson then asked him whether, having these rights in mind, he wished to talk. Defendant replied that he did. At that point they were interrupted by a deputy who advised that the officers were ready to transport defendant to Marin County. Stinson had earlier initiated transportation arrangements because so many Marin County deputies were in Santa Rosa that the office was understaffed and it was urgent that those deputies should return to San

Rafael as soon as possible. A reasonable explanation was given for the failure to take a statement from defendant at that time. The record does not support an inference that defendant at that time indicated a desire not to talk or that he refused to talk.

Defendant accompanied the deputies to San Rafael, arriving there in about one-half hour, and he and Stinson went to the sheriff's office. Stinson reread the *Miranda* rights to defendant, asked if he understood them and, with these rights in mind, did he wish to talk to Stinson. Defendant replied in the affirmative to each question. Stinson then asked him if he was involved in the Ackley case. Defendant replied, "Yes, I'm involved." He made no further explanation of what he meant, and he did not qualify such admission by words indicating that such involvement was "before," "during" or "after the offense."[5] He did express concern about what would happen to him, and Stinson replied that he could not discuss that. Defendant responded that his concern was not as to penalties but apprehension as to where and with whom he might be confined.

Thereafter a conversation took place in the district attorney's office. A showing was made that defendant indicated a reluctance to talk. The court held that whether this reluctance was based on fear of retaliation or fear of incrimination it was clearly a reluctance to talk, and it excluded evidence of any further statements made by defendant while in custody.

*Instructions.*

The court instructed the jury on the elements of first degree murder, including willful, deliberate, premeditated killing and killing committed in the perpetration of, or attempt to perpetrate, rape, robbery or burglary (Pen. Code, § 189); that although there are *two degrees* of murder the evidence was such that "either the defendant is innocent of the charge of murder or he is guilty of murder in the first degree"; that defendant had introduced evidence tending to show that he was not present at the time and place of the commission of the offense for which he was on trial and that if the jury, after a consideration of all the evidence, had a reasonable doubt that he was present at the time the crime was committed he was entitled to an acquittal; that "every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony" is an accessory to such felony (Pen. Code, § 32); and that "Should

---

[5]Hereinafter discussed is defendant's contention that the court should have instructed the jury that on the evidence it could convict him of being an accessory after the fact.

you believe that the defendant is guilty of being an accessory to murder as I have just defined accessory to you but nevertheless have a reasonable doubt as to whether the defendant is guilty of murder, it would be your duty to acquit him."

Defendant contends that the instruction that he was either guilty of murder in the first degree or innocent "unfairly took factual issues away from the jury," citing *People* v. *Modesto* (1963) 59 Cal.2d 722 [31 Cal. Rptr. 225, 382 P.2d 33]. In *Modesto* there was evidence upon which the jury could have based a verdict of voluntary manslaughter, a lesser included offense in the charge of murder. In the record before us there is no evidence which would support a verdict of a lesser degree of murder, of manslaughter, or of any lesser necessarily included offense.[6]

Defendant further contends that after the instruction that the jury should acquit him if it found him guilty of being an accessory after the fact, the court should have further instructed that the jury had a choice to convict him "as an accessory after the fact to murder as a lesser included offense," citing *People* v. *Morrison* (1964) 228 Cal.App.2d 707 [39 Cal.Rptr. 874]. The principles stated in *Morrison* (pp. 712-714) clearly refute defendant's contention. Here the only evidence introduced on behalf of defendant was alibi (that he was home at the time he was supposed to have been seen on the highway in Sommerhalder's car the night of the killings) and all the evidence introduced by the prosecution was directed toward, and supported, the theory that the killings occurred in the commission or attempt to commit burglary, robbery and rape. Jury instructions must be responsive to the issues, which in a criminal case, are determined by the evidence (*People* v. *Carmen* (1951) 36 Cal.2d 768, 772-773 [228 P.2d 281].) The crime of being an accessory after a fact is separate and distinct (Pen. Code, § 972). It is not a necessarily included offense in the principal offense here charged, murder. "The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." (*People* v. *Greer* (1947) 30 Cal.2d 589, 596 [184 P.2d 512]; *In re Hess* (1955) 45 Cal.2d 171, 174 [288 P.2d 5].) Murder can be committed without the murderer being an accessory after the fact. The latter offense, therefore, is not necessarily included in the former. Defendant could not have been convicted in this case as an accessory after the fact (*People* v. *Baker* (1958) 164 Cal.App.2d 99, 107-108 [330 P.2d 240]). It would have been error to give the instruction.

---

[6]Section 1159 of the Penal Code provides that "The jury . . . may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, . . . ."

■ We find no error in the failure of the court to give cautionary instructions regarding the testimony of an "accomplice." In admitting Sommerhalder's statements the court specifically ruled that it was _not_ admitting them as statements of a co-conspirator and that they were admitted under the adoptive admission exception to the hearsay rule to show defendant's response thereto. The court fully instructed the jury that the evidence was not introduced for the truth of the matter asserted. It was not required to further instruct, on its own motion or otherwise, that such evidence should be viewed with distrust because it related to statements made by an accomplice.

■ There is no merit in the contention that the court should have instructed, on its own motion, that the felony-murder rule could not be applied unless the killing occurred in the furtherance of a common design, citing _People_ v. _Washington_ (1965) 62 Cal.2d 777, 783 [44 Cal.Rptr. 442, 402 P.2d 130]. Certainly an inference could be drawn from the evidence that the Ackleys were killed in the furtherance of the common design of burglary, robbery and rape. The court sufficiently instructed the jury on the felony-murder doctrine.

_Sentences._

The death sentences imposed by the jury on each count are unconstitutional under the authority of _People_ v. _Anderson_ (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880]; and _Furman_ v. _Georgia_ (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726], and the judgment appealed from must be modified to provide for a sentence of life imprisonment on each count.

It is not therefore necessary to address ourselves to the alleged errors in the impanelment of the penalty jury nor the court's denial of defendant's request for change of counsel made after the close of the guilt trial and just prior to the penalty trial.

The judgment is modified to provide sentences of life imprisonment and as so modified is affirmed.

**McCOMB, J.**—I concur in the majority opinion, except that, for the reasons expressed in my dissenting opinion in _People_ v. _Anderson,_ 6 Cal.3d 628, 657 [100 Cal.Rptr. 152, 493 P.2d 880], I dissent from the modification of the judgment.