[Civ. No. 19938. Third Dist. May 21, 1981.]

In re TERRY S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
TERRY S., Defendant and Appellant.

**COUNSEL**

Donald A. Primavera, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel Carey and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PARAS, J.**—Terry S., a minor, appeals from an order continuing him a juvenile court ward after it was found he had received stolen property.[1] (Pen. Code, § 496.) ▉ He contends (1) the evidence is insufficient to sustain the petition, (2) error in the admission of hearsay evidence as an adoptive admission, (3) he is entitled to predisposition behavior credits, and (4) error in denying his request for a jury trial.

Evidence adduced at the jurisdictional hearing showed that two shotguns, a rifle, and a box of ammunition were taken on May 5, 1980, in a burglary of Mary Ellen Smith's home at 6554-23d Street in Sacramento. The time of the taking was between 8:45 a.m. and 4:15 p.m. Smith testified that one of the shotguns was normally kept in a black and green vinyl case and the other in a tan case.

At about 2:15 p.m., Smith's neighbor, Marian Miller, observed two boys (a driver and a passenger) ride up to the Smith house on a bicycle. She described them as male blacks about 13 to 15 years old, with slight to medium builds. She did not recognize them. When they reached the front of the Smith house, the passenger jumped from the bicycle, ran to the front of the Smith garage, and without searching took what appeared to be a rifle and a package from bushes located there. He then ran back to and mounted the bicycle, and the two boys rode off. At the corner they met Jimmy M.; with a smile of apparent recognition, the three boys then departed together.

Fourteen-year-old Jimmy M. testified that on the afternoon of May 5, while at Alonzo P.'s house about a half city block from the Smith residence, Alonzo told him that he (Alonzo) and Terry had burglarized a house up the street and had concealed a rifle in the bushes in front of the house. Alonzo asked Jimmy to help Terry and Alonzo retrieve the stolen property, and Alonzo offered Jimmy a shotgun in return for his assistance. Jimmy declined to help. Terry was present during this conversation, but did not speak.

Jimmy further testified that he saw Alonzo retrieve something from the bushes in the front of the Smith house and while Alonzo was retrieving it, Terry was on the sidewalk across the street about 32 feet

---

[1]On the minor's motion, count 1 of the petition, alleging a burglary (Pen. Code, § 459), was dismissed for lack of sufficient evidence.

away. He first described the object as a shotgun, then as a 45-inch brown case. He further testified that when Alonzo went up to the bushes and picked up what looked like a shotgun or rifle he (Jimmy) began to walk away. On cross-examination, Jimmy testified that what he saw Alonzo retrieve was a case but he did not see a gun within the case. When Alonzo picked up the object, Jimmy had an unobstructed view from about half a block away.

Later in his direct examination, Jimmy said he remembered telling a police officer that he saw both Alonzo and Terry go to the Smith front yard and retrieve three guns from the flowerbeds and that he now remembered seeing both Alonzo and Terry retrieve three guns. He saw Terry carrying one in a case and Alonzo carrying the other two weapons as they ran from the yard.

On cross-examination, Jimmy said it was Alonzo alone who went to the bushes and what he saw Alonzo retrieve was one brown case, but he did not see any gun it. Jimmy acknowledged that he was testifying because he was subpoenaed and that he did not want to testify. He also said he had received a threat in connection with his testimony.

Terry is black and 17 years old.

■ The essential elements of receiving stolen property are (1) the property must have been stolen, (2) the accused must have taken it into his possession, and (3) knowledge that it was stolen. (*People* v. *Vann* (1974) 12 Cal.3d 220, 224 [115 Cal.Rptr. 352, 524 P.2d 824].)

■ The foregoing factual summary constitutes substantial evidence to support the finding that Terry received stolen property. The trier of fact could reasonably have concluded that the items retrieved from the bushes were taken in the burglary of the Smith house due to their physical and temporal proximity and to their description. Moreover, as discussed *infra*, there was evidence that Alonzo stated in Terry's presence that he and Terry were going to retrieve property they had taken in a burglary. Although the fact finder obviously disbelieved the portion of the statement relating to Terry's participation in the burglary, the court could reasonably infer that the recovered property was in fact stolen and Terry was aware of this.

Additionally, contrary to Terry's characterization of the evidence as showing only his mere access or proximity to the stolen property, the

evidence is sufficient to support a finding that he participated in its recovery to the extent that he personally exercised dominion and control over it or was liable as an accomplice of Alonzo. (Cf. *People* v. *Myles* (1975) 50 Cal.App.3d 423, 429 [123 Cal.Rptr. 348].)

■ Terry also assails the discrepancies in the testimony of Jimmy. But the fact finder obviously believed Jimmy's testimony as to Terry's complicity. "'To warrant the rejection [by an appellate court] of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.'" (*People* v. *Thornton* (1974) 11 Cal.3d 738, 754 [114 Cal.Rptr. 467, 523 P.2d 267], quoting *People* v. *Huston* (1943) 21 Cal.2d 690, 693 [134 P.2d 758].) Although Jimmy's testimony was inconsistent as to how many guns were recovered and exactly by whom, his testimony was not inherently improbable. Accordingly, we are bound by the fact finder's acceptance of it.

■ Similarly unmeritorious is the contention that the court erred in admitting Alonzo's statements that he and Terry were going to retrieve the property they had stolen in a burglary of a nearby house. The statements were admissible as an adoptive admission under Evidence Code section 1221.[2] As explained in *People* v. *Preston* (1973) 9 Cal.3d 308, 313-314 [107 Cal.Rptr. 300, 508 P.2d 300]: "If a person is accused of having committed a crime, under circumstances which fairly afford him an opportunity to hear, understand, and to reply, and which do not lend themselves to an inference that he was relying on the right of silence guaranteed by the Fifth Amendment to the United States Constitution, and he fails to speak, or he makes an evasive or equivocal reply, both the accusatory statement and the fact of silence or equivocation may be offered as an implied or adoptive admission of guilt." Here each of those requirements was met. *Fisch* v. *Los Angeles Metropolitan Transit Authority* (1963) 219 Cal.App.2d 537 [33 Cal.Rptr. 298], upon which Terry relies, is factually inapposite in that there the witness could not remember the party's reaction to the accusation. Here, in contrast, Jimmy testified that Terry was indeed present when the statement was made and remained silent. The evidence of the statement and the reaction to it were properly admitted.

---

[2]Evidence Code section 1221 provides: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth."

■ Terry's contention that equal protection concepts entitle him to predisposition behavior credits against his maximum period of confinement is without merit. Juveniles who are adjudged wards of the juvenile court and committed to the Youth Authority are not similarly situated to adults sentenced to prison. And all such juveniles so committed are treated equally with respect to conduct credits.

■ Finally Terry contends the court should have granted his request for a jury trial since there was a likelihood he would be committed to the youth authority. He bases his argument upon the California Constitution. There is no state or federal constitutional right to a jury trial in a juvenile proceeding. (*People* v. *Superior Court* (*Carl W.*) (1975) 15 Cal.3d 271, 274 [124 Cal.Rptr. 47, 539 P.2d 807]; *In re Frederick G.* (1979) 96 Cal.App.3d 353, 362 [157 Cal.Rptr. 769].)

The judgment (order) is affirmed.

Regan, Acting P. J., and Blease, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 12, 1981.