[Crim. No. 8535.   Second Dist., Div. Four.   Jan. 17, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES MORRISON, Defendant and Appellant.

James Morrison, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an amended information filed by the District Attorney of Los Angeles County, defendant was charged in Count I with committing an assault with a deadly weapon in violation of Penal Code section 245; in Count II with kidnapping for the purpose of robbery, in violation of Penal Code section 209; and in Counts III and IV with robbery, in violation of section 211 of the Penal Code. Count I was dismissed prior to the trial. The information further alleged at the time of the commission of the offenses in Counts II, III and IV, defendant was armed with a deadly weapon, namely, a metal bar used and intended to be used as a club. The information further alleged two prior felony convictions.

Defendant was represented by counsel. Defendant pleaded not guilty to each count and denied the priors as alleged. The jury returned a verdict of guilty as to each count, found that defendant was armed at the time of the commission of the offenses, fixed the degree of the robbery counts to be that of the first degree, and found the priors as alleged to be true. Defendant and all counsel waived a jury trial as to the determination of the penalty on Count II. The court fixed the penalty thereon as life imprisonment without possibility of parole. Defendant and all counsel waived the right to file an application for probation and requested immediate sentence. Probation was denied. Motion for new trial was denied. Defendant was sentenced to state prison for the term of his natural life, without possibility of parole as to Count II and for the term prescribed by law as to each of Counts III and IV. Sentences as to Counts III and IV were ordered to run consecutively with one another, but concurrently with the sentence pronounced in Count II. Defendant prosecutes this appeal from the judgment of conviction and from the order denying his motion for a new trial.

Marcia Stanfield testified she left her residence on March 1, 1962, around 10 a. m. She locked the doors and secured the windows before her departure. She returned around

1 p.m. and went upstairs to a closet in the bedroom where she discovered defendant. Defendant began beating her with a metal bar. She fell to the floor and was unconscious for awhile. Defendant removed $30 from her purse as well as a ring and a watch from her dresser. She told defendant she had $1,000 downstairs in the hope she could escape by the front door. Defendant forced her downstairs by holding her. She attempted to escape by the front door, but defendant forcibly dragged her up the stairs. She testified she went downstairs willingly but was dragged back upstairs against her will. Defendant began beating her again, pulling her into the bathroom and advised her he wished to change into some of her husband's clothes. She attempted to lock the door but defendant pulled her out of the bathroom and beat her again with the iron bar. Defendant changed clothes and told her to lie down alongside her bed on the floor and she complied. He warned her to remain on the floor for 15 minutes as he left the room.

A doctor testified that Mrs. Stanfield's injuries included a moderately severe brain concussion, a fractured skull, compound lacerations of the scalp, a compound fracture of the left elbow and a compound fracture of the right hand.

Arnold Nollman testified he observed defendant park a blue Cadillac in front of the victim's house. He saw defendent approach the house and ring the doorbell. Later, he saw defendant get into the car and pull away and a few minutes thereafter the victim came running out of the house screaming and was covered with blood. The witness assisted the victim into a taxicab.

Another victim, Harry K. Boone, testified that on February 28, 1962, he left his house and his wife at approximately 12:30 p. m. to go to the bank. He returned about 1 p. m. and noticed a 1959 blue Cadillac parked in front of his house. He attempted to enter his home through the front door but it was locked. He went to the rear door and that was locked. He entered with his key through the rear door and went through the kitchen, living room and then into the bedroom and saw a stranger, identified as defendant, wearing white gloves and holding a big iron bar in his hands. Defendant grabbed him and turned him around, and threatening him, took $250 or more from his billfold and left the billfold on the dresser. He then left through the front door, passing

the witness's wife as she was returning home, entered a blue Cadillac and drove away.

The witness testified he made an investigation of the windows and discovered one had been pried open by someone. Screens had been taken out and a stool was set in front of the window. He further testified the windows were all closed and the screens in good order when he left to go to the bank.

Defendant testified in his own behalf. He admitted he entered the Stanfield home with intention to burglarize. He further testified that had anyone been at home he would not have entered. He heard a noise and tried to find a place to hide because he could not get out of the room without being seen. He heard footsteps on the stairway, so he hid in the closet. The person came immediately to the closet and when she started to scream, he hit her over the head with a pipe and as she continued to scream he continued to beat her. He removed the money from the victim's purse and took a ring and watch from the dresser. After he knocked her to the floor, he attempted to tie her up with a stocking and a scarf, and asked her if there was any more money in the house. She stated there was a thousand dollars downstairs and they went downstairs to get the money. Instead of getting any money the victim ran to the door. Defendant told her they would go back upstairs. She said "Don't hold my collar so tight, I can hardly breathe." Defendant forcibly took her back upstairs, holding her collar tightly, and asked where her husband's clothes were, that he wanted to change his clothing. She pointed out her husband's clothes to him and he began to change. He made her lie down beside the bed, face down and told her not to move. After he changed into her husband's clothes he told her to lie there for 10 or 15 minutes, then he left the residence.

Defendant does not contend that the evidence was insufficient to justify the verdict, nor does he contend that the conviction in Count IV (the robbery of Mr. Boone) falls within the proscription of Penal Code section 654 by virtue of his conviction and sentence in Count II.

The two robberies in Counts II and IV were entirely separate and distinct and involved different victims. (See *People* v. *Lagomarsino*, 97 Cal.App.2d 92, 100 [217 P.2d 124].)

Defendant does contend that Counts II and III, kidnapping for purpose of robbery and robbery, set forth two offenses which were committed in a continuous course of criminal conduct and that he can only be sentenced and

punished once for such course of conduct, pursuant to section 654 of the Penal Code. We agree that only one punishment may be imposed and that is for the more serious of the two offenses. However, the evidence is ample and sufficient to sustain convictions on each of the separate offenses set forth in Counts II and III.

The evidence reveals defendant entered the victim's home to commit theft which he did in fact commit. He was surprised by the victim's return to her home. He used a weapon which the jury found to be a deadly weapon, i.e., a metal bar, to take the money from the victim's purse. After being beaten with the metal bar, the victim was taken downstairs in the hope of a second robbery in the sum of $1,000. The victim was then forced against her will up the stairs where she was again assaulted and beaten with the bar, causing bodily harm. Kidnapping for the purpose of robbery was then complete. The evidence is sufficient and ample to support defendant's conviction on both these counts.

Defendant can be punished for either of the offenses in Counts II and III, but not both of them. As stated in *People* v. *McFarland,* 58 Cal.2d 748, 762-763 [26 Cal.Rptr. 473, 376 P.2d 449], ''With respect to the procedure to be followed on appeal where double punishment has been erroneously imposed, it should be stressed that section 654 proscribes double punishment, not double conviction; conduct giving rise to more than one offense within the meaning of the statute may result in initial conviction of both crimes. only one of which, the more serious offense, may be punished. [Citation.] The appropriate procedure, therefore, is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned. [Citation.]''

Of the two offenses involved here, kidnapping for the purpose of robbery in violation of section 209, the offense in which the person kidnapped suffered bodily harm is the one subject to the greater punishment. (Pen. Code, §§ 209, 211.) Accordingly, it is necessary to reverse the judgment to the extent that it relates to the punishment for robbery in Count III.

Defendant next contends that sentences pronounced in Counts III and IV were made to run consecutively, that this was double punishment added to the life sentence without possibility of parole as pronounced in Count II, and is enjoined by section 669 of the Penal Code. With this we do agree. ''. . . section 209, under the circumstances here present,

unequivocally provides for a straight life sentence. ▮▮▮▮ Likewise, it is clear under Penal Code section 669 that all sentences for other crimes must run concurrently with a life sentence. [Citations.]'' *(People* v. *Velarde,* 201 Cal.App.2d 231, 234 [19 Cal.Rptr. 832].)

The judgment is reversed insofar as it imposes a sentence for robbery in Count III. That portion of the judgment which reads ''Sentence as to Counts III and IV are ordered to run consecutively one to the other, but concurrently with sentence in Count II'' is modified to read: ''No sentence is pronounced as to Count III and the sentence pronounced in Count IV is ordered to run concurrently with the sentence pronounced in Count II.'' In all other respects the judgment is affirmed and the purported appeal from the order denying the motion for a new trial is dismissed.

Burke, P. J., and Bishop, J. pro tem,* concurred.

A petition for a rehearing was denied February 7, 1963, and appellant's petition for a hearing by the Supreme Court was denied March 18, 1963.

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.