[Crim. No. 8535.    Second Dist., Div. Four.    July 27, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES MORRISON, Defendant and Appellant.

David A. Sanders, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and James A. Schmiesing, Deputy Attorneys General, for Plaintiff and Respondent.

BURKE, P. J.—Defendant was charged with (1) assault with a deadly weapon, (2) kidnaping for the purpose of robbery subjecting the victim to bodily harm, (3) robbery, and (4) robbery of a second victim. As to all counts defendant was alleged to have been armed with a deadly weapon, a metal bar usable as a club, and to have suffered two prior felony convictions.

Count 1 was dismissed and a jury trial was had on counts 2, 3 and 4, the jury returning a guilty verdict on all counts, finding the victim to have suffered bodily harm in count 2, the robberies to have been of the first degree, while armed, and the allegations of two prior felony convictions to be true.

Defendant waived a jury trial with respect to the issue of penalty and the filing of an application for probation, requesting immediate sentence. The court sentenced him to life imprisonment without possibility of parole on count 2. A motion for a new trial on counts 2 and 3 was denied. Later defendant was sentenced to state prison as to counts 3 and 4, the sentences to run consecutively with each other, but concurrently with the life sentence on count 2. Defendant ap-

pealed in propria persona and this court rendered its decision, partially affirming and partially reversing defendant's conviction. (*People* v. *Morrison,* 212 Cal.App.2d 33 [27 Cal.Rptr. 828].) Thereafter, defendant not having been represented by counsel on the appeal, in the interests of justice this court recalled the remittitur, vacated its decision and appointed counsel to represent defendant for further appeal proceedings.

On renewed appeal, defendant, through counsel, urges insufficiency of evidence to support the judgment, errors regarding jury instructions, and erroneous sentences.

We have excerpted the details of the crimes committed by defendant from the decision on the first appeal (*People* v. *Morrison, supra*) and set them forth in a footnote.[1]

---

[1]"Marcia Stanfield testified she left her residence on March 1, 1962, around 10 a.m. She locked the doors and secured the windows before her departure. She returned around 1 p.m. and went upstairs to a closet in the bedroom where she discovered defendant. Defendant began beating her with a metal bar. She fell to the floor and was unconscious for awhile. Defendant removed $30 from her purse as well as a ring and a watch from her dresser. She told defendant she had $1,000 downstairs in the hope she could escape by the front door. Defendant forced her downstairs by holding her. She attempted to escape by the front door, but defendant forcibly dragged her up the stairs. She testified she went downstairs willingly but was dragged back upstairs against her will. Defendant began beating her again, pulling her into the bathroom and advised her he wished to change into some of her husband's clothes. She attempted to lock the door but defendant pulled her out of the bathroom and beat her again with the iron bar. Defendant changed clothes and told her to lie down alongside her bed on the floor and she complied. He warned her to remain on the floor for 15 minutes as he left the room.

"A doctor testified that Mrs. Stanfield's injuries included a moderately severe brain concussion, a fractured skull, compound lacerations of the scalp, a compound fracture of the left elbow and a compound fracture of the right hand.

"Arnold Nollman testified he observed defendant park a blue Cadillac in front of the victim's house. He saw defendent [*sic*] approach the house and ring the doorbell. Later, he saw defendant get into the car and pull away and a few minutes thereafter the victim came running out of the house screaming and was covered with blood. The witness assisted the victim into a taxicab.

"Another victim, Harry K. Boone, testified that on February 28, 1962, he left his house and his wife at approximately 12:30 p.m. to go to the bank. He returned about 1 p.m. and noticed a 1959 blue Cadillac parked in front of his house. He attempted to enter his home through the front door but it was locked. He went to the rear door and that was locked. He entered with his key through the rear door and went through the kitchen, living room and then into the bedroom and saw a stranger, identified as defendant, wearing white gloves and holding a big bar in

■ With respect to the alleged insufficiency of evidence defendant again contends that such limited forcible movement of the victim, namely, upstairs and downstairs, within the immediate zone and scope of an incomplete robbery, for the purpose of robbery, all within the confines of the victim's home, cannot sustain a conviction for kidnaping for the purpose of robbery under Penal Code section 209, which section carries the death penalty or a life term without possibility of parole if the victim suffers bodily harm. The amount of asportation required is again emphasized and the court is exhorted to retreat from the broadened concept of kidnaping involving movement of only a few feet, as in *People* v. *Enriquez,* 190 Cal.App.2d 481, 487 [11 Cal.Rptr. 889] (6 feet toward a counter in a store) and *People* v. *Monk,* 56 Cal.2d 288, 295 [14 Cal.Rptr. 633, 363 P.2d 865] (6 to 8 feet toward a car). However, since *People* v. *Chessman,* 38 Cal.2d 166, 192 [238 P.2d 1001], wherein it is stated, ''It is the fact, not the distance, of forcible removal which con-

---

his hands. Defendant grabbed him and turned him around, and threatening him, took $250 or more from his billfold and left the billfold on the dresser. He then left through the front door, passing the witness's wife as she was returning home, entered a blue Cadillac and drove away.

''The witness testified he made an investigation of the windows and discovered one had been pried open by someone. Screens had been taken out and a stool was set in front of the window. He further testified the windows were all closed and the screens in good order when he left to go to the bank.

''Defendant testified in his own behalf. He admitted he entered the Stanfield home with intention to burglarize. He further testified that had anyone been at home he would not have entered. He heard a noise and tried to find a place to hide because he could not get out of the room without being seen. He heard footsteps on the stairway, so he hid in the closet. The person came immediately to the closet and when she started to scream, he hit her over the head with a pipe and as she continued to scream he continued to beat her. He removed the money from the victim's purse and took a ring and watch from the dresser. After he knocked her to the floor, he attempted to tie her up with a stocking and scarf, and asked her if there was any more money in the house. She stated there was a thousand dollars downstairs and they went downstairs to get the money. Instead of getting any money the victim ran to the door. Defendant told her they would go back upstairs. She said 'Don't hold my collar so tight, I can hardly breathe.' Defendant forcibly took her back upstairs, holding her collar tightly, and asked where her husband's clothes were, that he wanted to change his clothing. She pointed out her husband's clothes to him and he began to change. He made her lie down beside the bed, face down and told her not to move. After he changed into her husband's clothes he told her to lie there for 10 or 15 minutes, then he left the residence.''

stitutes kidnapping in this state," the question of the distance of removal has not been the determinative factor of the offense.

Defendant's objections regarding the jury instructions given and refused are based upon the contention that false imprisonment was a lesser and necessarily included offense in that of kidnaping for purpose of robbery, and a requested instruction defining false imprisonment was refused by the court.

■ The cases involving instructions on lesser offenses, or on lesser degrees, fall into three groups:

(1) At one extreme are the cases where there is evidence which, if accepted by the trier of fact, would absolve defendant from guilt of the greater offense or degree, although it would support a finding that he was guilty of a crime of lesser degree or of a lesser and included offense. It is now settled that, in this situation, an instruction on the lesser offense or degree must be given, even though not requested, and no matter how unlikely it may appear that any verdict other than one of guilty of the higher offense or degree would be returned. (*People* v. *Carmen*, 36 Cal.2d 768 [228 P.2d 281]; *People* v. *Burns*, 88 Cal.App.2d 867 [200 P.2d 134]; *People* v. *Jeter*, 60 Cal.2d 671 [36 Cal.Rptr. 323, 388 P.2d 355].)

■ (2) At the opposite extreme are the cases where the evidence, even though construed most favorably to defendant, would not support a finding of guilty of the lesser offense or degree, although the evidence would, if construed by the trier of fact in favor of the prosecution, support a finding of guilt of the higher offense or degree. This situation encompasses cases where defendant denies any complicity in the crime charged, and thus lays no foundation for any verdict intermediate between "not guilty" and "guilty as charged" (*People* v. *Sanchez*, 30 Cal.2d 560, 572 [184 P.2d 673]; *People* v. *Brown*, 131 Cal.App.2d 643 [281 P.2d 319]); and cases such as *People* v. *Thomas*, 58 Cal.2d 121 [23 Cal.Rptr. 161, 373 P.2d 97], and *People* v. *Mitchell*, 61 Cal.2d 353 [38 Cal.Rptr. 726, 392 P.2d 526] where some element essential to the "lesser" offense but not necessary to the "greater" is either not proven or shown not to exist. In *People* v. *Mitchell, supra,* the evidence supported a finding of guilty of felony murder, during the course of a robbery, an offense where no specific intent to kill is required, but would not have supported a verdict of guilty of second degree murder, an

offense where, under the facts, such an intent was an essential element.

In this situation, as was held in the cited cases, and many others, not only is it unnecessary to give an instruction on the lesser offense, but it is error to so instruct because to do so would violate the fundamental rule that instructions must be pertinent to the evidence in the case at bar.

■ (3) But we deal here with a third situation, intermediate between the two just discussed. Here the evidence, not controverted by defendant, is sufficient to support a finding of guilty of the greater offense, and is also sufficient to support a finding of guilty of the lesser offense because it is the very nature of the greater offense that it could not have been committed without the defendant having the intent and doing the acts which constitute the lesser offense. A defendant guilty of kidnaping, as defined by either section 207 or 209 of the Penal Code, must necessarily be guilty of the "unlawful violation of the personal liberty of" his victim and therefore be guilty of false imprisonment as defined by section 236. Similarly, a defendant cannot commit the offense of sale of a narcotic without also having committed the lesser offense of possession of the narcotic (*People* v. *Rosales,* 226 Cal.App. 588, 592 [38 Cal.Rptr. 329] ; one guilty of assault with intent to commit murder must also be guilty of simple assault (*People* v. *Madden,* 76 Cal. 521 [18 P. 402]) ; and one guilty of a violation of Penal Code section 288 is also guilty of contributing to the delinquency of a minor (*People* v. *Moody,* 216 Cal.App.2d 250 [30 Cal.Rptr. 785]).

In this intermediate situation, it is not error for the trial court, if so requested and if in its discretion it elects to do so, to give instructions on the lesser offense, since a verdict of guilt of such lesser offense would not be without support in the record. ■ However, as in the cases of *Madden* and *Moody* above cited, and in many other cases, it has long been settled that the trial court need not, even if requested, instruct the jury on the existence and definition of a lesser and included offense if the evidence was such that the defendant, if guilty at all, was guilty of something beyond the lesser offense. Thus, in *Madden* (p. 523) : "The defendant having fired his pistol at [the victim] during the fight . . . , if guilty at all, was guilty of something beyond a simple assault."

Similarly, in *Moody* the defendant, having admitted that he had engaged in the conduct specifically proscribed by sec-

tion 288 of the Penal Code, " . . . there was no basis for an instruction as to included lesser offense. If appellant had stated that he had merely taken the three young girls into the back room of his barbershop but had denied touching them as testified to by them and admitted by him, there would then have been a basis for giving an instruction as to the lesser and included offense of contributing to the delinquency of a minor. But in view of the virtually uncontradicted evidence the instructions requested were properly refused.''

█ Applying the concepts of *Madden* and *Moody* to the facts of the instant case, had the defendant testified that he merely restrained the victim from leaving the premises and denied that he ordered her about the premises and stated that she complied through fear, there would have been support for an instruction on the lesser and included offense of false imprisonment. But, as in *Madden* and *Moody*, in view of the uncontradicted evidence, the instructions requested were properly refused.

Defendant testified that when they started downstairs he was holding the victim by the collar of her dress; that he ordered her back upstairs; that he ordered her to go from one room to another room; that he ordered her to ''come on out [*sic*] the bathroom and lay down beside the bed, face down, and don't move, and so she said, 'I will.' So she come out and lay down, face down, beside the bed.'' He further testified that, when his victim ran out of the bedroom, he ran and caught her at the top of the stairway; told her to go back and lie down in the same spot, which she did. When defendant was cross-examined with respect to their going downstairs and back upstairs, he testified he knew that the victim did not want to go back upstairs but that she went because he told her to do so. He was asked, ''You knew at that time she was in fear of you?'' He answered: ''Well, I am quite sure I knew she was in fear.''

█ Thus, if the testimony of the victim that defendant used physical force to move her from one room to the other and from one floor to the other is not considered, there is ample evidence from the defendant's own testimony that his victim was compelled to obey his orders because of fear of further serious injury. Such conduct, in addition to his admitted purpose in entering the premises to burglarize and his admissions regarding the theft of clothing following the asportation, constituted kidnaping for the purposes of rob-

bery. ▓ Where the victim feels compelled to obey because she fears harm or injury from the accused and her apprehension is not unreasonable under the circumstances, the offense is kidnaping (*People* v. *De Georgio,* 185 Cal.App.2d 413, 422 [8 Cal.Rptr. 295]), and the court properly instructed the jury on this subject as follows: "When one in the exercise of his own free will, and with knowledge of what is taking place with respect to his person, voluntarily and willingly consents to accompany another, the latter cannot be guilty of kidnaping the former so long as such condition of consent exists. However, where one assents to accompany another due to duress, fear or threats of bodily harm, the person so assenting is not considered to be exercising his or her own free will, and the crime of kidnaping may lie."

▓ Defendant contends that the word "accompany" in the above quoted instruction is a misstatement of the law and prejudicially misled the jury as to what conduct is required to constitute kidnaping for the purpose of robbery; that an affirmative "transportation" of the victim is required notwithstanding the question of distance; that the meaning of the word "accompany" provides a lesser standard of conduct to commit the offense of kidnaping than that stated and implied by the statutory language and the jury was consequently confused thereby. The argument is untenable as the instruction specifically excludes kidnaping when the accompaniment is voluntary and definitively includes kidnaping when such accompaniment is due to duress, fear or threats of bodily harm, each of which negate any willing consent that might be implied in a context such as is suggested by defendant.

▓ Defendant correctly contends that the trial court erroneously imposed a sentence with respect to count 3, enjoined by Penal Code section 654; also defendant's objection to the sentences on counts 3 and 4 (made to run consecutively as to each other and concurrently with the sentence imposed on count 2, enjoined by Penal Code section 669) is correct. Reference is again made to this court's former decision in *People* v. *Morrison,* 212 Cal.App.2d 33, 36-38 [27 Cal.Rptr. 828], in which defendant's contentions requesting such sentences are set forth.

The judgment is reversed insofar as it imposes a sentence for robbery in count 3. That portion of the judgment which reads "Sentences as to Counts 3 and 4 are ordered to run consecutively, one to the other, but concurrently with sen-

tence in Count 2'' is modified to read: ''No sentence is pronounced as to Count 3 and the sentence pronounced in Count 4 is ordered to run concurrently with the sentence pronounced in Count 2.'' In all other respects the judgment is affirmed and the purported appeal from the order denying the motion for a new trial is dismissed.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1964. Mosk, J., did not participate therein.