Filed 11/29/22 P. v. Pacheco CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ARIEL ROBERTO CHIC PACHECO,<br><br>Defendant and Appellant. | F083083<br><br>(Super. Ct. No. SF020130A)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Peña, J. and DeSantos, J.

Following a jury trial, defendant Ariel Roberto Chic Pacheco was convicted of kidnapping to commit robbery, kidnapping, second degree robbery, criminal threats, false imprisonment, and attempting to dissuade a victim from reporting a crime. On appeal, he contends (1) the evidence was insufficient for the jury to find that he possessed the necessary intent to rob the victim when the kidnapping began, (2) the simple kidnapping and false imprisonment convictions must be reversed as lesser-included offenses, and (3) the case should be remanded to allow the trial court to reconsider its sentencing under the new discretion afforded by recent amendments to Penal Code section 654.[1] We affirm the aggravated kidnapping conviction, reverse the convictions of lesser-included offenses, and remand for the trial court to resentence defendant with the benefit of newly amended section 654.

## PROCEDURAL SUMMARY

In a November 17, 2020 information, the Kern County District Attorney charged defendant with kidnapping to commit robbery (§ 209, subd. (b)(1); count 1), kidnapping (§ 207, subd. (a); count 2), second degree robbery (§ 212.5, subd. (c); count 3), criminal threats (§ 422; count 4), false imprisonment (§ 236; count 5), and attempting to dissuade a victim from reporting a crime (§ 136.1, subd. (b)(1); count 6).

On May 28, 2021, the jury found defendant guilty on all counts.

On July 21, 2021, the trial court sentenced defendant to an aggregate term of life with the possibility of parole after seven years as follows: on count 1, life with the possibility of parole after seven years; on count 2, five years, stayed pursuant to section 654; on count 3, three years, stayed pursuant to section 654; on count 4, two years, stayed pursuant to section 654; on count 5, two years, stayed pursuant to section 654; and on count 6, two years, concurrent to the term on count 1.

On the same day, defendant filed a notice of appeal.

---

**1**  All further statutory references are to the Penal Code.

# FACTUAL SUMMARY

Early in the morning on October 13, 2020, C.S.[2] drove her four-door pick-up truck to her cousin's house to drop off her young son for babysitting before starting her workday. C.S. arrived at her cousin's house around 5:20 a.m. while it was still dark out. She parked her truck just outside the house and carried her sleeping son inside to her cousin. C.S. left the truck running, with the key in the ignition and all doors closed. She spent about three minutes inside her cousin's house and then returned to the truck to head to work.

As soon as she started to drive away, she felt a gloved hand cover her nose and mouth from the seat behind her. She struggled to free herself, without success, and lost control of the truck for a short time. A man later identified as defendant told her to "drive well" and instructed her where to drive, keeping one hand on her mouth and using his other hand to hold a firearm near her head. The firearm was later discovered to be an imitation firearm. At defendant's instruction, C.S. drove the truck around and around the residential neighborhood, turning where he told her to turn. Defendant ultimately had her park the truck in an alleyway and ended the encounter after accepting about $150 in cash from her.

During the drive, defendant "just kept saying to drive well," while keeping his hands on C.S.'s mouth and the firearm. When asked whether defendant made any demands of her, C.S. testified that he "asked if there was anyone that would pay for me." C.S. further testified that, at some unspecified point, she told defendant that she had no money, except for what she had with her in her purse—which defendant then told her to give him. C.S. gave him the cash from her purse, though she did not see what defendant did with it, as he stayed in the seat behind her the whole time he was in the truck.

---

**2**     C.S. has a hyphenated surname, and we refer to her by the first letters of her given name and her surname.

It is unclear from the testimony exactly when in the encounter the above statements were made and when C.S. handed defendant the money from her purse, but C.S. did specify that it followed her negative answer to the question of whether anyone would pay for her. C.S. also specified that once they stopped in the alley, defendant told her "that someone was coming to pick [her] up with money for—in exchange for [her]self, and with that money, he would then leave." No one came to pick her up; and, after "some time" in the alley, defendant exited the truck. C.S. then immediately turned on the truck and drove away. C.S. estimated that defendant was in the truck with her for a total of 15 to 20 minutes.

Upon her release, C.S. drove to work but soon returned home and called law enforcement. Kern County Sheriff's deputies responded and apprehended defendant at a trailer located in the rear of a residential property across the street from C.S.'s cousin's house. Senior Deputy Jesse Hernandez interviewed defendant in Spanish at the scene after defendant waived his *Miranda* rights. After initially telling Hernandez that he just went to work that morning, defendant admitted to the events in C.S.'s truck—which he estimated lasted about 10 minutes. When Hernandez asked whether he bought the imitation firearm "to rob people," defendant answered, "yes."

When asked about various statements reflected in his postinterview report, Hernandez acknowledged that defendant had indicated he did not have a specific plan when he entered C.S.'s truck, informing Hernandez, "I was just telling her I don't know what got into my mind. I just told her what can she do, right?" Hernandez also confirmed the accuracy of defense counsel's quotation from Hernandez's police report that, according to defendant, "[C.S.] told him if it is money he wants, she can give him money." Hernandez further acknowledged that when asked whether he demanded money of C.S., defendant replied that "she asked what I wanted."

Lastly, according to Hernandez, defendant told him he did take some money from C.S. but that after taking it he apologized and told her he was going to let her go before

4.

exiting the truck and throwing the money down in the alley. That money was never found.

## DISCUSSION

### I. Sufficiency of the Evidence

Defendant first contends that the evidence presented in support of the kidnapping for robbery charge (count 1) was constitutionally insufficient to sustain the conviction. Specifically, defendant argues the evidence did not show that from the outset he intended to rob C.S., as opposed to kidnapping her for ransom or to commit extortion. We conclude there was substantial evidence to support this conviction.

### A. Standard of Review

"In reviewing a challenge to the sufficiency of the evidence under the due process clause of the Fourteenth Amendment to the United States Constitution and/or the due process clause of article I, section 15 of the California Constitution, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Cole* (2004) 33 Cal.4th 1158, 1212.) "We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) " ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." ' " (*People v. Abilez* (2007) 41 Cal.4th 472, 504 (*Abilez*).)

5.

It is well settled that " '[a] reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.) " 'The standard of review is the same when the prosecution relies mainly on circumstantial evidence.' " (*People v. Burney* (2009) 47 Cal.4th 203, 253 (*Burney*).)

**B.     Relevant Law**

" 'Any person who kidnaps or carries away any individual to commit robbery' is guilty of kidnapping for robbery." (*Burney*, *supra*, 47 Cal.4th at p. 255, quoting § 209, subd. (b) (eff. Nov. 8, 2006 to Dec. 31, 2021)[3].) Kidnapping for robbery, one of several forms of aggravated kidnapping proscribed by section 209, requires "that the defendant have the specific intent to commit a robbery at the time the kidnapping begins." (*People v. Davis* (2005) 36 Cal.4th 510, 565–566; see *People v. Laursen* (1972) 8 Cal.3d 192, 198 (*Laursen*) ["a kidnaping in which a robbery occurs does not constitute kidnaping for the purpose of robbery unless the specific intention to rob is present at the time of the original asportation"].) This is because "the primary purpose of the statute is to impose harsher criminal sanctions to deter the carrying away of persons during the commission of a robbery in a manner which substantially increases the risk that someone will suffer grave bodily or psychic injury or even death." (*Laursen*, at p. 198.) Thus, a robbery "committed as an afterthought to a kidnaping" generally does not fall within section 209. (*Laursen*, at p. 199; see *People v. Tribble* (1971) 4 Cal.3d 826, 831 ["A person could not kidnap and carry away his victim to commit robbery if the intent to rob was not formed until after the kidnaping had occurred."].)

---

**3**      Recent minor amendments to section 209, subdivision (b) changed the text to: "*A* person who kidnaps or carries away *an* individual …." (Stats. 2021, ch. 626, § 16, eff. Jan. 1, 2022 (italics added).) All further quotations of section 209 are to the version in effect in October 2020 when the instant offense was committed.

Robbery itself, among other things, requires a specific intent to permanently deprive another of their personal property. (§ 211 [definition of robbery]; see *People v. Torres* (1995) 33 Cal.App.4th 37, 50.) " 'The specific intent with which an act is done may be shown by a defendant's statement of his intent and by the circumstances surrounding the commission of the act.' " (*People v. Craig* (1994) 25 Cal.App.4th 1593, 1597.) "The specific intent with which an act is performed is a question of fact. [Citation.] If any substantial evidence supports the trier of fact's finding on this issue, we will not disturb it." (*In re Albert A.* (1996) 47 Cal.App.4th 1004, 1008.)

## C.    Analysis

Defendant challenges the sufficiency of the evidence of kidnapping for robbery only with respect to the intent element, arguing that the People failed to present sufficient evidence to show that he intended to rob C.S. when he first seized her in her truck. Defendant does not dispute that he committed both kidnapping and robbery over the course of the encounter, but he argues there is not enough evidence that he intended to rob C.S. from the outset. Rather, he contends he kidnapped her with the intent to obtain a ransom or extort payment from someone else.

As defendant correctly argues, kidnapping for ransom or extortion is a different crime than kidnapping for robbery; and defendant was charged only with the latter. (Compare § 209, subd. (a) (2020) [criminalizing one who holds another "for ransom, reward or to commit extortion or to exact from another person any money or valuable thing"] with § 209, subd. (b) (2020) [criminalizing one who "kidnaps or carries away an individual to commit robbery," among other things].) As reflected in separate subdivisions (a) and (b), section 209 embraces "two fundamentally different factual situations: (1) the seizing or carrying away of a person for the purpose of exacting something of value from a different person; [and] (2) the carrying away of a person for the purpose of robbing that same person." (*People v. Macinnes* (1973) 30 Cal.App.3d 838, 844, italics omitted.) We need not delve into all the differences and similarities

7.

between the related offenses of extortion and robbery, however, because we conclude there was enough evidence in this case that (from the start) defendant intended to rob—even if he also may have intended to extort.

"Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense." (*People v. Pre* (2004) 117 Cal.App.4th 413, 420.) This case is no different, in that the jury lacked direct evidence of defendant's intent. Therefore, the question is whether "from the entire melange of circumstances shown by the evidence," a reasonable trier of fact could have inferred that defendant kidnapped C.S. with the specific intent of robbing her. (*People v. Craig*, *supra*, 25 Cal.App.4th at p. 1604.)

Importantly, "a kidnaping may have multiple purposes, one of which may be robbery …." (*In re Dennis* (1975) 46 Cal.App.3d 50, 62, discussing *People v. Cleveland* (1972) 27 Cal.App.3d 820, 827.) Where "two intents are not mutually exclusive" and substantial evidence supports both, a jury can reasonably find that a defendant harbored dual intents at the time of an attack. (*People v. Carpenter* (1997) 15 Cal.4th 312, 389, abrogated on other grounds by *People v. Diaz* (2015) 60 Cal.4th 1176; see, e.g., *People v. Reed* (1966) 241 Cal.App.2d 102, 105 [affirming burglary conviction and noting intent to assault does not negate contemporaneous intent to steal].)

Here, defendant repeatedly expressed to C.S. a desire to obtain money from someone else in exchange for her, which, as he aptly argues, supports an intent to hold her for ransom or extortion. However, these statements do not negate a contemporaneous intent to rob. In his interview with Hernandez at the scene, defendant relayed that in the truck he "just told [C.S.] what can she do, right?" A reasonable juror could have inferred from this testimony that defendant had an overall intent to obtain money from C.S. by any available means, including stealing it from her person (i.e., robbery). Further, defendant also acknowledged to Hernandez that the imitation firearm he used in the kidnapping was one he purchased "to rob people." Although not the strongest

8.

evidence—given the lack of testimony as to how long ago defendant purchased the firearm—using that firearm during this kidnapping lends some support to an inference that he meant to use it for its intended purpose when he abducted C.S.

Finally, the fact that defendant did actually rob C.S. in the truck also supports a finding that he intended to rob her when he entered the truck.[4] (See *Abilez*, *supra*, 41 Cal.4th at p. 508 [" '[t]here is no better proof that [defendant] entered the [victim's house] with intent to commit robbery than a showing he did in fact commit robbery after his entry' "].) Inferring the intent necessary for aggravated kidnapping *solely* from the occurrence of a robbery would disregard the Supreme Court's repeated admonition that "a kidnaping in which a robbery occurs does not constitute kidnaping for the purpose of robbery unless the specific intention to rob is present at the time of the original asportation." (*Laursen*, *supra*, 8 Cal.3d at p. 198.) However, the fact that a robbery occurs within the course of a kidnapping is still a circumstance that can contribute toward a jury finding the necessary intent was present from the outset. (*Abilez*, at p. 508.)

Defendant argues on appeal, as did his counsel in closing arguments, that he never said anything to C.S. about taking money or belongings from her until she suggested giving him the money in her purse; and that up to then he only expressed a desire to obtain money in exchange for her. Even assuming the purse money was not discussed until after the truck stopped, perhaps 10 minutes into the encounter (taking defendant's lower estimate as most favorable to the verdict on this question), a jury could still reasonably have inferred an intent to rob earlier than defendant's first outward mention of receiving C.S.'s own money, based on the above discussed combination of

---

[4] The jury could reasonably have inferred defendant's intent to permanently deprive C.S. of the money in her purse because, despite his statement to Hernandez that he tossed it aside upon leaving the truck, the money was never recovered. (See *Burney*, *supra*, 47 Cal.4th at p. 254 [jury was not required to believe defendant's explanation to police regarding lack of intent to permanently deprive].) Defendant does not challenge the sufficiency of the evidence of his robbery conviction.

(1) defendant's expressed general desire to get money out of the abduction, (2) defendant's acknowledged purpose for the firearm he used, and (3) the fact that he ultimately robbed C.S.

We recognize that defendant did not verbalize as clear an interest in stealing from C.S. as the defendants did while attacking and transporting their victim in *People v. Curry* (2007) 158 Cal.App.4th 766, a case to which the People attempt a brief analogy. (See *id*. at pp. 774, 779–780 [jury could reasonably infer the necessary intent to rob from the defendants actively searching the victim for money they believed she was carrying and asking her where the money was several times before putting her in the car].) Nevertheless, the circumstantial evidence of intent to steal need not be as strong as it was in *Curry* to survive this most deferential standard of review. To reverse the conviction we would have to be able to say " ' " 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Penunuri*, *supra*, 5 Cal.5th at p. 142; *People v. Pre*, *supra*, 117 Cal.App.4th at p. 421 ["Convictions are seldom reversed based on insufficiency of the evidence."].) Given defendant's use of a firearm he intended to use in robberies, his overall desire to obtain money from the abduction, and his actual robbery of C.S., we cannot say that this standard is met.

Defendant also argues on appeal that his decision to have C.S. drive around the neighborhood for 20 minutes without demanding money "refutes" any intent to rob from the onset. First, taken in the light most favorable to the verdict, the testimony showed the entire encounter may have lasted as little as 10 minutes, and it is unclear exactly how much of that time was spent driving versus parked. Second, to the extent defendant is arguing that driving around a neighborhood is not an effective way to achieve the goal of robbery, that also is not the test and does not preclude the necessary intent. (See *In re Gregory S.* (1978) 85 Cal.App.3d 206, 210–211 [concluding it could reasonably be inferred that intent to commit robbery was formed before the kidnapping where defendants forced the victim into their car at gunpoint, drove around for roughly 15 to

10.

20 minutes, and then took his clothes and wallet and beat him].)  The jury reasonably could have concluded that at the time the kidnapping began, defendant wanted to commit robbery but wished to do it in a more isolated part of the neighborhood and then ultimately struggled to find an appropriate location, lost his nerve, or changed tactics.

Again, in this posture "our role as an appellate court is not to make new findings of facts or second-guess the trier of fact.  We only determine whether there is substantial evidence supporting the conclusion of the trier of fact." (*In re Michael D.* (2002) 100 Cal.App.4th 115, 126–127.)  If the circumstances reasonably justify the jury's findings, we may not reverse the judgment merely because the circumstances might also support a contrary finding. (*People v. Albillar*, *supra*, 51 Cal.4th at p. 60.)  Notwithstanding defendant's expressed interest in holding C.S. for ransom, the jury reasonably could have found that he also contemporaneously intended to rob C.S.  As these dual intents are not mutually exclusive, and the intent to rob is supported by substantial circumstantial evidence, we affirm the conviction.

## II.    Lesser-Included Offenses

Defendant next argues that, if we uphold the aggravated kidnapping conviction (as we do), his convictions on count 2, so-called "simple" kidnapping under section 207, subdivision (a), and count 5, false imprisonment under section 236, must be reversed because they are lesser-included offenses of kidnapping for robbery.  The People concede that these convictions should be reversed.

"Although, ordinarily, a defendant 'may be convicted of any number of the offenses charged' (§ 954), 'a judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses.' " (*People v. Aranda* (2019) 6 Cal.5th 1077, 1089.)  "An offense is necessarily included within another if 'the statutory elements of the greater offense … include all the elements of the lesser

11.

offense ….' " (*People v. Lewis* (2008) 43 Cal.4th 415, 518, overruled on other grounds in *People v. Black* (2014) 58 Cal.4th 912, 919.)

As suggested by their names, simple kidnapping under section 207, subdivision (a) is a lesser offense necessarily included within the crime of kidnapping for robbery under section 209, subdivision (b). (*People v. Lewis*, *supra*, 43 Cal.4th at p. 518; see *Dunn v. Superior Court* (1984) 159 Cal.App.3d 1110, 1118 ["Kidnaping for the purpose of robbery cannot be committed without committing the lesser offense of kidnaping."].)

On these facts, defendant's false imprisonment conviction is also a lesser offense included within his conviction of kidnapping for robbery. False imprisonment is defined as "the unlawful violation of the personal liberty of another." (§ 236.) False imprisonment occurs " 'when "the victim is 'compelled to remain where he does not wish to remain, or to go where he does not wish to go.' " ' " (*People v. Williams* (2017) 7 Cal.App.5th 644, 672.) "A defendant guilty of kidnapping, as defined by either section 207 or 209 …, must necessarily be guilty of the 'unlawful violation of the personal liberty of' his victim and therefore be guilty of false imprisonment as defined by section 236" (*People v. Morrison* (1964) 228 Cal.App.2d 707, 713), so long as the false imprisonment charge arises from the same act as the kidnapping. (See *People v. Ratcliffe* (1981) 124 Cal.App.3d 808, 821 ["He who kidnaps a victim does so in order to restrain the personal liberty of his victim (Pen. Code, § 236), whatever his purpose may be for the false imprisonment (to rape, to rob, to obtain ransom, etc.)."].) Here, forcing C.S. to drive her truck around the neighborhood at gunpoint—thereby committing false imprisonment—was an intrinsic part of defendant's commission of aggravated robbery.

Therefore, we agree with the parties that defendant's simple kidnapping and false imprisonment convictions must be reversed as lesser-included offenses of the kidnapping for robbery conviction.[5]

---

[5] Although the names of the crimes might suggest otherwise, we note that defendant's robbery conviction on count 3 is not a lesser-included offense of kidnapping

## III.     Resentencing under Assembly Bill No. 518

Lastly, by way of supplemental briefing, defendant seeks remand for resentencing based on the new discretion afforded under section 654 as amended by Assembly Bill No. 518 (2021–2022 Reg. Sess.) (Assembly Bill 518). The relevant amendment to section 654—which became effective after defendant's sentencing—would have allowed the trial court to stay his life sentence on the kidnapping for robbery conviction rather than on the related convictions carrying shorter prison terms. The People agree that we should remand for resentencing after this ameliorative change in law.

Under section 654, if a defendant's single action or course of conduct violates multiple laws, "the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, [but] the trial court may impose sentence for only one offense." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.) At the time of defendant's sentencing, section 654 required trial courts to impose punishment under the offense carrying "the longest potential term of imprisonment." (§ 654, former subd. (a).) On January 1, 2022, Assembly Bill 518 took effect, amending section 654 to authorize trial courts instead to punish covered crimes under any of the applicable sentencing provisions. (§ 654, subd. (a); Stats. 2021, ch. 441, § 1.) As amended, section 654 now gives trial courts discretion to impose and execute a shorter sentence while staying the execution of the longest sentence. (*People v. Mani* (2022) 74 Cal.App.5th 343, 379, review den. Apr. 13, 2022.)

"Because Assembly Bill 518 was enacted while defendant's [case] was not yet final and it provides the trial court new discretion to impose a lower sentence, defendant is entitled to its ameliorative benefit." (*People v. Mani*, *supra*, 74 Cal.App.5th at p. 379; see *In re Estrada* (1965) 63 Cal.2d 740, 744–745 [absent evidence of contrary legislative

---

for robbery because one "may be convicted of kidnapping for robbery even if the robbery is not completed." (*People v. Lewis*, *supra*, 43 Cal.4th at p. 519 ["Because one can commit a kidnapping for robbery without also committing a robbery, robbery is not a lesser included offense of kidnapping for robbery."].)

13.

intent, ameliorative criminal statutes apply to all cases not final when the statute takes effect].) The parties agree that Assembly Bill 518 applies retroactively to this case, which is not yet final. (See *People v. Jennings* (2019) 42 Cal.App.5th 664, 682 ["For purposes of the *Estrada* rule, a judgment is not final so long as courts may provide a remedy on direct review."].)

Here, as required by section 654 at the time of sentencing, the trial court imposed and executed the sentence under the conviction with the longest potential prison term, kidnapping for robbery (count 1), sentencing defendant to life with the possibility of parole after seven years; and the court stayed the sentences on the other four convictions that were based on the same course of conduct (counts 2–5). The two related convictions of robbery (count 3) and criminal threats (count 4) respectively authorize prison term triads of two, three, or five years (see § 213, subd. (a)(2)) and 16 months, two years, or three years (see §§ 18, subd. (a), 422, subd. (a) & 1170, subd. (h)).[6] The present record does not "clearly indicate" that the trial court necessarily would have imposed the life sentence on count 1 as opposed to one of these lighter sentences had it possessed the discretion to choose. (See *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) We therefore agree with the parties that remand is appropriate so the trial court may resentence defendant anew with the benefit of the discretion now afforded by amended section 654.

## DISPOSITION

The judgment is reversed with respect to the convictions on count 2 for kidnapping and count 5 for false imprisonment, and the matter is remanded to the trial court for resentencing on the remaining convictions in light of Assembly Bill 518. The judgment of conviction is otherwise affirmed.

---

[6] Because we reverse the other two related convictions on counts 2 and 5, as discussed above, the court can no longer impose a sentence on those offenses.